NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTOR PALUMBO | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 06-CV-5331 (DMC) |
| UNITED PARCEL SERVICE OF AMERICA, INC., et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon a motion by United Parcel Service of America, Inc., UPS Health and Welfare Package and UPS Health and Welfare Plan (collectively "Defendants") to dismiss the amended complaint of Victor Palumbo, Michael Purdue, Frank Masino, Felicia Eltzhotz, Roman Blahut, Jeffery Montanaro, Lori Salvatore, Thomas Mulligan and Deshon White (collectively "Plaintiffs") pursuant to Article III of the United States Constitution and/or Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based on the following, it is the decision of this Court that Defendants' motion to dismiss is **granted**.

**I.     BACKGROUND**

      Plaintiffs filed a complaint with this Court on November 8, 2006. In that complaint, Plaintiffs alleged that Defendants violated the terms of the National Master Agreement ("NMA"), also known as the collective bargaining agreement ("CBA"), by failing to make contributions to the UPS Health and Welfare Plan and the UPS Health and Welfare Package (collectively "Plans"). On

February 14, 2007, in response to Plaintiffs' original complaint and consistent with the procedures set forth by the NMA, a grievance was filed with the National Grievance Committee seeking interpretation of the disputed contractual provision in the CBA. On October 2, 2007, this Court stayed the action pending the outcome of grievance and arbitration proceedings as a matter of law for failure to exhaust the contractual grievance procedures. The Court held that a predicate interpretation of the CBA was required, "namely whether UPS owes contribution at specified rates."

The parties submitted and agreed upon the following issue for arbitration: "Is the Company required to make hourly contributions to its own Health and Welfare Plans under Article 34 of the National Master Agreement from 2002 forward?" In a December 1, 2008 opinion, the arbitrator concluded, "[t]he Company is not required to make hourly or other defined contributions to its own Health and Welfare Plans under Article 34 of the National Master Agreement from 2002 forward." United Parcel Services of America v. International Brotherhood of Teamsters Local 177, Lab. Arb. Rep. (2008) (Vaughn, Arb.). In his opinion, however, the arbitrator also suggested UPS might be liable for retaining monies in excess of the costs of providing and administering benefits ("surplus funds"), but declined to resolve this "related issue[,]" finding that the specific issue submitted before him did not include the separate question regarding the status of such surplus funds. United Parcel Services of America v. International Brotherhood of Teamsters Local 177, Lab. Arb. Rep. (2008) (Vaughn, Arb.).

On January 27, 2009, Plaintiffs filed an amended complaint with this Court. Plaintiffs' amended complaint alleges that, in their fiduciary capacity, Defendants wrongfully depleted the assets of the Plans by paying benefits out of the Plans' assets and failing to contribute additional assets to the Plans. The amended complaint alleges breach of fiduciary duties because Defendants "raided the Plans' surplus assets to fund benefits, while, as Employer and Plan Sponsor, it has

2

simultaneously appropriated to its corporate self hundreds of millions of dollars of contractually negotiated and mandated health and welfare contribution increases it was obligated to earmark <u>only</u> to health and welfare for UPS employees participating in the Company's health and welfare Plans." Plaintiffs' claims for breach of fiduciary duties fall under ERISA section 404, 29 U.S.C. § 1104, ERISA section 405, 29 U.S.C. § 1105 and ERISA section 406, 29 U.S.C. § 1106. Pursuant to ERISA 409, 29 U.S.C. § 1109, in Paragraph 57(c) of the amended complaint, Plaintiffs seek restoration of all accumulated assets wrongfully disbursed, an injunction and other appropriate equitable relief, an accounting of Plan assets, an appointment of an independent fiduciary, attorneys fees and costs, and lastly, interest, damages and all such other relief as the Court deems equitable and just.

On February 27, 2009, Plaintiffs commenced a separate, but corresponding action in this Court, captioned <u>International Brotherhood of Teamsters Local 177 v. United Parcel Service, Inc</u>., 09-CV-0903, seeking to vacate and remand the arbitration award for clarification, claiming that the arbitrator's failure to resolve whether the NMA obligates UPS to allocate contractually mandated "health and welfare contribution increases only to health and welfare" [sic] renders the award incomplete and ambiguous. By opinion, dated September 30, 2009, this Court denied the motion to vacate and remand, concluding that the newly presented question requires initial arbitral review. On March 30, 2009, Defendants filed a motion to dismiss the amended complaint in the instant matter.

## II.  STANDARD OF REVIEW

### A.  Standing

Constitutional standing refers to "the power of a federal court to resolve a dispute." <u>Graden v. Conexant Sys. Inc.</u>, 496 F3d 291, 295 (3d Cir. 2007). Statutory standing contemplates whether

"Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury." Id.

To bring a suit in a federal court, the plaintiff must have standing pursuant to Article III of the United States Constitution. To establish standing under Article III, the plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. (citing AT&T Communications of N.J., Inc. v. Verizon N.J., Inc., 270 F.3d 162, 170 (3d Cir. 2001)).

Pursuant to 29 U.S.C. § 1132(a)(2), "a civil action may be brought by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109]." Pursuant to 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant, beneficiary or fiduciary in order "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this title or the terms of the plan."

### B. FED. R. CIV. P. 12(b)(6)

When deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly

authentic documents if the plaintiff's claims are based upon those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). While under the liberal notice pleading standard, a plaintiff is not required to plead facts sufficient to prove its case, there still must be an underlying claim for relief before the court. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir 2004). To defeat a 12(b)(6) motion the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### III. DISCUSSION

#### A. Standing - Injury Component

Defendants contend that Plaintiffs do not have standing because they have not been deprived of any benefit to which they were entitled under the Plans. As a result, Defendants argue that the absence of an injury precludes this Court from entertaining Plaintiffs' claims. Further, representing that although the Third Circuit Court of Appeals has yet to rule on the issue, Defendants contend that standing in this matter requires the establishment of individualized harm. See Harley v. 3M, 284 F.3d 901 (8th Cir. 2002). Consequently, Defendants argue that Plaintiffs failure to establish standing pursuant to Article III precludes this Court from exercising subject matter jurisdiction in the present matter.

Plaintiffs claim that Defendants breached their fiduciary duties through depletion and transfer of the Plans' assets. Plaintiffs' opposition papers argue that "but for the massive depletion of Plan assets to pay current obligations, UPS would have been required to allocate to health & welfare the contractually mandated contribution increases it wrongfully appropriated to its corporate self."

Therefore, Plaintiffs contend that the payment of benefits under the Plan was not for the exclusive benefit of the beneficiaries and as a consequence, Plaintiffs suffered a cognizable injury permitting standing in this matter.

      *i.*     *Individualized Harm*

"Section 502(a) of ERISA allows 'a participant or beneficiary' to bring a civil action, *inter alia,* 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Pascack Vaklley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004). "29 U.S.C. § 1132(a)(2) [ ] accords various parties the right to sue ERISA plan fiduciaries for breaches of their fiduciary duties." Graden v. Conexant Sys. Inc., 496 F3d 291, 295 (3d Cir. 2007). "As § 1132(a) addresses losses to ERISA plans resulting from fiduciary misconduct, the Supreme Court has held that suits under it are derivative in nature -- that is, while various parties are entitled to bring suit (participants, beneficiaries, fiduciaries, and the Secretary of Labor), they do so on behalf of the plan itself." Id. (citing Mass Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985)). "Consequently, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries." Id. In interpreting § 1109, the Third Circuit Court of Appeals has incorporated the interpretation of the Supreme Court of the United States that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." In re Schering-Plough Corp. ERISA Litig, 420 F.3d 231, 241 (3d Cir. 2005) (citing Mass Mut. Life, 473 U.S. at 142) ( "To read directly from the opening clause of § 409(a), which identifies the proscribed acts, to the 'catchall' remedy phrase at the end -- skipping over the intervening language establishing remedies benefit[t]ing, in

the first instance, solely the plan -- would divorce the phrase being construed from its context and construct an entirely new *class* of relief available to entities other than the plan.")). Accordingly, the Third Circuit in Ream v. Frey determined that § 502(a)(2), 29 U.S.C. § 1132(a)(2) does not permit individualized recovery. 107 F.3d 147, 152 (3d Cir. 1997). By contrast, in Bixler v. Central Penn. Teamsters, 12 F.3d 1292 (3d Cir. 1993), the Ream Court concluded that "ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes lawsuits for individualized relief for breach of fiduciary obligations." Id.

Plaintiffs, in the instant matter, assert claims pursuant to both subsections, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3). Insofar as Plaintiffs' claims pertain to section 1132(a)(2), recognized as permitting recovery on behalf of the Plans alone, the assertion of individualized harm seems unnecessary for purposes of standing under that provision. At the same time, although Plaintiffs disclaim any intention to recover on an individualized basis, insofar as Plaintiffs' claims pertain to section 1132(a)(3), in the absence of allegations supporting a claim for individualized harm, Plaintiffs have failed to establish standing on that ground.

    ii.    *Available Remedies and Scope of Harm*

"Where a plaintiff establishes a breach of fiduciary duty, the plaintiff is entitled to equitable relief pursuant to ERISA § 502(a)." In re: Unisys Corp. Retiree Med. Benefits ERISA Litigation, 579 F.3d 220, 234 (2009). "The term 'equitable relief' in § 502(a)(3) must refer to those categories of relief that were typically available at equity[,]" including injunctions, mandamus, and restitution. Id. Participants and beneficiaries may "seek[] to utilize the enforcement provisions contained in § 502(a)(3), 29 U.S.C. § 1132(a)(3) in order to remedy an alleged violation of the fiduciary duties imposed by § 404, 29 U.S.C. § 1104." Horvath, 333 F.3d at 456. "Section 1109(a) provides the following remedies for such breaches:"

> [(1)] mak[ing] good to such plan any losses to the plan resulting from each such breach, . . . [(2)] . . . restor[ing] to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and [(3)] . . . such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Id.

"[W]ith regard to injunctive relief, it is well-established that '[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Horvath, 333 F.3d at 456 (citing RJG Cab, Inc.v. Hodel, 797 F.2d 111, 118 (3d Cir. 1986)); (citing Financial Inst. Retirement Fund v. Office of thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992) (noting that "ERISA's goal of deterring fiduciary misdeeds" supports a "broad view of participant standing under ERISA," and holding that a violation of § 404 satisfies the injury requirement of Article III)). Further, Larson v. Northrop Corp. interpreted the Third Circuit Court of Appeals as holding that "a plaintiff need not suffer harm (i.e. be denied pension benefits) before he becomes entitled to bring an action under 29 U.S.C. § 1104(a)." 21 F.3d 1164, 1171 (D.C. Cir. 1994).

Insofar as Plaintiffs seek injunctive relief, the threshold for establishing an injury is not the traditional requisite standard of actual harm, but a lower threshold. By way of comparison, the Horvath case indicated that insofar as the plaintiff sought restitution and disgorgement of profits the harm was individualized in nature and therefore, subject to the traditional standard of actualized harm. 333 F.3d at 456. In the instant matter, however, given that the arbitrator has decided that there is no contractual obligation to make contributions to the Plans, it is unclear that the level of requisite harm for either remedy has been established. Without a duty to make contributions, there can be no harm. Further, to the extent that Plaintiffs allege that Defendants owed a duty to allocate contractually mandated "health and welfare contribution increases only to health and welfare," the new question

presented is a matter of contractual interpretation and requires submission in accordance with established grievance procedures. At this time, in the absence of such a showing consistent with the contractually mandated grievance procedures, this Court declines to pass on whether such an obligation exists and assuming, without concluding such a duty exists, whether a violation has occurred constituting the requisite level of harm

### B. ERISA Claims

Pursuant to 29 U.S.C. § 1106(a)(1)(D), a breach of a fiduciary duty arises when the following elements are established:

(1) the person or entity is "[a] fiduciary with respect to [the] Plan";

(2) the fiduciary "causes" the Plan to engage in the transaction at issue;

(3) the transaction "uses" the Plan assets;

(4) the transaction's use of the assets is "for the benefit of" the party in interest; and

(5) the fiduciary knows or should know that the elements of three and four are satisfied.

Reich v. Compton, 57 F.3d 270, 278 (3d Cir. 1995).

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

In this case, the trustees paid out plan assets to the beneficiaries of the Plans in the form of yearly benefits which were due under the terms of the Plans. These assets funded benefits guaranteed to the beneficiaries pursuant to the Local 177 Supplement. Plaintiffs claim that this action depleted the

9

Plans assets and was a breach of Defendants fiduciary duties under ERISA. ERISA § 406(a)(1)(D); 29 U.S.C. § 1106(a)(1)(D). The transaction at issue in the instant matter concerns the transaction contractually mandated by the parties. The contract requires the payment of benefits to the beneficiaries. Alone, the contractually mandated payment of benefits to the beneficiaries cannot be read as a breach of fiduciary duty. Further, although the transaction at issue potentially results in a collateral and indirect benefit to a party in interest, the distribution and use of the Plans' assets is for the direct benefit of the beneficiaries. The arbitrator has concluded that there is no contractual obligation to make defined contributions. Under the present circumstances, without the benefit of arbitral review of the newly raised issue, there is no indication that this Court can redress any claimed injury alleged by Plaintiffs.

Pending submission and resolution of the new question raised by the arbitrator in the corresponding action, this Court cannot infuse the amended complaint with a claim. Considering all of the allegations in the light most favorable to the Plaintiffs, they fail to state a claim under ERISA for which relief can be **granted**.

### IV.   CONCLUSION

For the reasons stated above, it is the finding of the Court that Defendants' motion is **granted**. Plaintiffs' amended complaint is **dismissed without prejudice**. An appropriate order accompanies this opinion.

S/Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       December 23, 2009
Original:   Clerk's Office
cc:         All Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File